UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| OSCAR SMITH, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:10-CV-158-CAN |
| v. | ) |
| | ) |
| DR. BALL and DR. ALLEN, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Oscar Smith, Jr., a *pro se* prisoner, was granted leave to proceed on a claim that Drs. Leonard Ball and Thomas Allen were deliberately indifferent to his medical needs when they discontinued his use of Artane. [Doc. No. 8.] The defendants move for summary judgment. [Doc. No. 57.] Because Smith has not demonstrated that either defendant violated his Eighth Amendment right to adequate medical care, summary judgment will be granted in favor of the defendants.

**I. PROCEDURE**

Smith filed this action on April 26, 2010, alleging that the defendants violated his Eighth Amendment right to adequate medical care when they discontinued his use of the drug Artane. [Doc. No. 1.] The case was screened pursuant to 28 U.S.C. § 1915A, and Smith was granted leave to proceed on Eighth Amendment claims against Drs. Ball and Allen in their individual capacities. [Doc. No. 8.] The parties thereafter engaged in discovery.[1] [Doc. Nos. 30-40.] The

---

[1] The parties also consented to the exercise of jurisdiction by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. No. 48.]

defendants then moved for summary judgment. [Doc. No. 57.] Smith has filed a response to the motion, to which the defendants have filed a reply. [Doc. Nos. 63, 64.]

## II. FACTS

The following facts are not in dispute unless otherwise stated. Smith has been housed at Westville Correctional Facility ("Westville") since October 28, 2009. [Doc. No. 60-2, Ball Aff. ¶ 4.] Dr. Ball is the staff psychiatrist at Westville responsible for treating inmates with mental illnesses. [*Id.* ¶ 3.] Smith suffers from a variety of psychiatric issues, including bipolar disorder, and has been under Dr. Ball's care since his arrival at the facility. [*Id.* ¶¶ 4-5.] Dr. Allen is a staff psychologist at the facility. [Doc. No. 60-3, Allen Aff. ¶ 3.] Although Dr. Allen also provides treatment for inmates with mental illnesses, as a psychologist he does not have the ability to prescribe or discontinue an inmate's medication. [*Id.*]

In the past several years, Smith has taken a variety of medications for his psychiatric issues, including Geodon, Valium, Depakene, and Artane. [Doc. No. 60-2, Ball Aff. ¶ 6; Doc. No. 60-4, Medical Records at 14-15.] Artane is not a psychiatric drug but is a medication used to help control the potential side effects of psychiatric medications. [Doc. No. 60-2, Ball Aff. ¶ 7.] Artane is typically prescribed for a few weeks or months after a patient begins taking psychiatric medications and is then discontinued. [*Id.* ¶ 8.] Artane is heavily trafficked in the prison system because offenders can get "high" off of it.[ *Id.* ¶ 11.]

In April 2010, Dr. Ball determined that there was no medical need for Smith to continue taking Artane. [*Id.* ¶ 8.] Accordingly, Dr. Ball discontinued the medication. [*Id.*] On April 13, 2010, Smith submitted a request for healthcare stating that his liver "cannot take any type of med change," but he did not describe any specific symptoms he was experiencing. [Doc. No. 60-4,

Medical Records at 1.] He was seen by a nurse the following day. [*Id.* at 2.] He reported to her that he had started a hunger strike that morning over the discontinuation of his Artane. [*Id.*] The nurse referred him to be seen by the doctor and by Dan Knaver, a licensed clinical social worker at the facility. [*Id.*] Smith was seen by another nurse the following day complaining of anxiety and chest discomfort. [*Id.* at 4-5.] His vital signs were found to be normal. [*Id.*] The nurse noted that Smith was angry over the discontinuation of the Artane, and that he threatened to continue his hunger strike if the drug was not prescribed for him. [*Id.* at 5.] After expressing his frustrations, Smith reported to the nurse that he felt some relief of his anxiety symptoms. [*Id.*]

On April 16, 2010, Smith was seen by Knaver. [*Id.* at 7-8.] Smith told Knaver that he had fallen down because of a negative reaction to his medications. [*Id.* at 8.] Knaver noted "[o]ne small superficial mark" on Smith's leg, but noted the absence of any muscle tightness or jaw clenching in Smith. [*Id.*] Knaver reported that Smith became calmer as he spoke with him. [*Id.*] On April 18, 2010, Smith refused to have his blood drawn so that lab work could be completed. [*Id.* at 9-10.] On April 20, 2010, Smith submitted a health care request asking to be put back on Artane. [*Id.* at 11.] The following day, he refused his psychiatric medications. [*Id.* at 12-13.]

On April 27, 2010, Smith was seen by Dr. Ball. [*Id.* at 14-17.] The doctor noted that Smith was refusing his medications but was being seen by a counselor. [*Id.*] Dr. Ball noted that Smith's appearance and behavior were unremarkable and that he was not exhibiting signs of psychosis or mania. [Doc. No. 60-5, Medical Records at 1.] The doctor discussed with Smith his treatment and medications, noted that Smith refused his treatment recommendations, and instructed that he return in two months. [*Id.* at 1-2.]

On May 2, 2010, Smith refused another blood draw. [*Id.* at 5.] On May 13, 2010, he submitted a request for healthcare asking to be put back on Artane. [*Id.* at 7.] He complained that other inmates were receiving the drug while he was not, but again did not describe any particular symptoms he was experiencing. [*Id.*] On May 19, 2010, Dr. Allen reviewed Smith's medical records in response to his grievance and informed him that all inmates in the facility were being taken off Artane as of June 1, 2010. [*Id.* at 8.] He noted that Smith was still refusing his medications and that he was not compliant with Dr. Ball's treatment recommendations. [*Id.* at 8-9.] On May 24, 2010, Knaver conducted a treatment plan review of Smith's care. [*Id.* at 10-11.]

On June 22, 2010, Dr. Ball conducted a follow-up examination with Smith, and noted that Smith remained angry about the discontinuation of his Artane. [*Id.* at 13-14.] Dr. Ball did not observe any signs of psychosis or mania in Smith. [*Id.* at 13.] After some discussion, Smith became receptive to trying a similar drug, Cogentin, in place of the Artane. [*Id.*] According to Dr. Ball, Smith did well on this medication. [Doc. No. 60-2, Ball Aff. ¶ 10.] On June 23, 2010, Knaver visited Smith and noted that his appearance and behavior were appropriate. [Doc. No. 60-5, Medical Records at 15.] On June 24, 2010, Smith refused another blood draw. [Doc. No. 60-6, Medical Records at 2-4.]

On July 20, 2010, Dr. Ball conducted a follow-up examination with Smith. [*Id.* at 5-6.] Smith complained about the substitution of Cogentin for Artane, but Dr. Ball did not observe him to be experiencing any negative side effects. [*Id.* at 5.] The doctor noted no signs of psychosis or mania, but noted that Smith's speech was loud and his mood irritable. [*Id.*] On July 21, 2010, Knaver visited Smith to conduct a treatment plan review and noted that his appearance and behavior were appropriate. [*Id.* at 7.] Smith again expressed anger about not receiving

4

Artane. [*Id.* at 8.] Since September 15, 2010, Smith has refused all psychiatric medications. [Doc. No. 60-2, Ball Aff. ¶ 6.]

## II. ANALYSIS

### A. Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

### B. The Defendants Were Not Deliberately Indifferent to Smith's Medical Needs

Inmates are entitled to adequate medical care under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must show: (1) he had an objectively serious medical need; and (2) the defendant was deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations omitted).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010.) Where a medical professional has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." Hayes v. Synder, 546 F.3d 516, 524 (7th Cir. 2008). Furthermore, a prisoner is not entitled to demand specific medical care, nor is he entitled to the "best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

Here, the medical records shows that the defendants provided Smith with appropriate medical care for his mental illness. The records reflect that Dr. Ball met with Smith regularly since his arrival at the facility, prescribed him medications, and monitored his condition. [Doc. No. 60-2, Ball Aff. ¶¶ 4-12; Doc. No. 60-4, Medical Records at 11-12, 14-17; Doc. No. 60-5, Medical Records at 1-2, 13-14; Doc. No. 60-6, Medical Records at 5-7.] Smith was also seen on multiple occasions by nursing staff, as well as a social worker who monitored his condition and

provided counseling. [Doc. No. 60-4, Medical Records at 1-8; Doc. No. 60-5, Medical Records at 15; Doc. No. 60-6, Medical Records at 7-8.] None of these staff members observed any signs that Smith was suffering adverse side effects from his psychiatric medications. [*See id.*] Although Smith was at times anxious or irritable during these events, there is nothing remarkable about this fact, given that Smith was suffering from a mood disorder and had a history of anxiety problems. [*See* Doc. Nos. 60-4, 60-5, and 60-6.]

Although Smith wanted to continue receiving Artane, Dr. Ball determined that it was no longer medically necessary for him to take the drug. [Doc. No. 60-2, Ball Aff. ¶ 8.] The Eighth Amendment does not entitle Smith to demand specific care or specific medications. Forbes, 112 F.3d at 267. Nor does his disagreement with Dr. Ball's medical judgment over the proper course of treatment establish an Eighth Amendment violation. *See* Berry, 604 F.3d at 44; *see also* Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) ("[M]edical decisions . . . such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview."). As to Dr. Allen, the undisputed facts show that he did not have the ability to prescribe or discontinue an inmate's medication, and he cannot be held vicariously liable for Dr. Ball's decision to discontinue his use of Artane. *See* Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009) (under 42 U.S.C. § 1983, public employees can be held liable "for their own misdeeds but not for anyone else's.").

Furthermore, it is notable that Smith has been non-compliant with Dr. Ball's treatment recommendations, including refusing his medications, refusing to have blood drawn so that lab work could be completed, and launching a hunger strike when his Artane was discontinued. [Doc. No. 60-2, Ball Aff. ¶ 6; Doc. No. 60-4, Medical Records at 1-2, 4-5, 9-10.] The defendants

7

cannot be held liable for any ill effects caused by Smith's own behavior. *See* Pinkston v. Madry, 440 F.3d 879, 892 (7th Cir. 2006) (defendants were entitled to summary judgment where the inmate himself was responsible for the delay in treatment); Walker v. Peters, 233 F.3d 494, 500 (7th Cir. 2000) (prison doctor who withheld HIV medication did not act with deliberate indifference where inmate refused to take an HIV test).

In opposing the motion for summary judgment, Smith submits documents showing that he was previously prescribed Artane, including while he was housed at a different correctional facility. [Doc. No. 63-1 at 1-2, 4-8.] There is no dispute that Smith was once prescribed Artane; it was simply Dr. Ball's medical judgment that this medication was no longer necessary. [*See* Doc. No. 60-2, Ball Aff. ¶¶ 7-10.] Whether some other doctor at another facility chose to prescribe the medication for Smith is not the issue. As stated above, Smith's disagreement with Dr. Ball's medical judgment about what medications he should be prescribed does not establish an Eighth Amendment violation. *See* Berry, 604 F.3d at 441; Snipes, 95 F.3d at 591.

Smith also submits an affidavit from an inmate who attests that he witnessed Smith suffer a seizure "brought on from his medication Artane being stopped by the Doctor a couple days prior." [Doc. No. 63-1 at 3.] However, this inmate is not a doctor and there is no apparent basis for him to have the personal knowledge needed to determine the cause of an alleged seizure. *See* Fed. R. Civ. P. 56(e)(1) (affidavits must be based on personal knowledge and must demonstrate that the affiant is competent to testify on the matters stated). Smith cannot defeat summary judgment with this type of "speculation." Gunville v. Walker, 583 F.3d 979, 986 (7th Cir. 2009).

Finally, Smith argues that Dr. Ball discontinued his Artane treatment because the Westville was no longer prescribing the medication. As a result, Smith argues that Dr. Ball was deliberately indifferent to Smith's medical needs because his medication was discontinued for non-medical reasons unrelated to his own personal treatment. The undisputed evidence shows, however, that although Westville did not provide Smith with Artane, it did provide him with a replacement medication, Cogentin, that was successful in controlling his symptoms. As a result, Smith's final argument also fails.

Based on the record, Smith has failed to demonstrate that Drs. Ball and Allen responded to his medical needs in a way that was so plainly inappropriate as to permit the inference that they intentionally or recklessly disregarded his needs. Accordingly, the defendants are entitled to summary judgment.

### IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment [Doc. No. 57] is **GRANTED** and judgment is **ENTERED** in favor of the defendants.

**SO ORDERED.**

Dated this 20th day of June, 2011.

s/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge
